MARION F. EDWARDS, Judge.
 

 12Pefendant/appellant, Dwayne Butler (“Butler”), appeals his convictions and sentences on two counts of armed robbery in violation of La. R.S. 14:64, and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. For reasons that follow, we affirm both the convictions and the sentences and remand the matter to the trial court for corrections of the commitment as instructed infra.
 

 Butler was originally charged with the three crimes by bill of information. He entered a plea of not guilty to all three counts. Several defense motions were filed, including a motion to sever count three from the two armed robbery charges. The motions were denied.
 

 Butler proceeded a to jury trial on all three counts and was found guilty. In due course, Butler was sentenced to serve forty-nine and one-half years at hard |3labor on each count of armed robbery, and fifteen years at hard labor on the possession of a firearm charge. All sentences were imposed without benefit of parole, probation, or suspension of sentence, and were made to run concurrently with the other sentences.
 

 Subsequently, the State filed a multiple bill of information pursuant to La. R.S. 15:529.1. Butler pled guilty to the charge of being a multiple offender. The trial court vacated the original sentence on count one (armed robbery) and imposed an enhanced sentence of forty-nine and one-half years without benefit of parole, probation, and suspension of sentence. The enhanced sentence was made to run concurrently with other sentences Butler was serving. This appeal followed.
 

 FACTS
 

 On August 22, 2006, at approximately 1:30 p.m., Debra Lindsey (“Ms. Lindsey”) went into the Rent-A-Center in Marrero to make a payment on a bill. An individual wearing a white T-shirt and jeans, later identified as Butler, came in behind her. Lakesha Smith (“Ms. Smith”), an employee of Rent-A-Center, assumed Ms. Lindsey and Butler were together, but discovered shortly afterward that they were not. Ms. Lindsey paid in cash and then turned around to leave. Butler followed Ms. Lindsey and robbed her. Butler told her, “Let me get that out you.” After Ms. Lindsey saw that Butler had a gun, she gave him all the money she had in her pocket, which she believed was over $200.
 

 Butler returned to the counter, showed Ms. Smith a gun, and demanded money. Ms. Smith gave Butler money, which she testified was less than $400, and he left. After he ran out of the store, Ms. Smith pressed the panic button and called 911 to report the robbery. When Ms. Smith went to lock the front door, she observed Ms. Lindsey crying in her car. Ms. Lindsey had returned to her car and called 911. Ms. Lindsey gave the police a physical description of the robber and |4told police he was wearing a white T-shirt and jean shorts. The incident was captured by the Rent-A-Center’s surveillance cameras, and still photographs were compiled from the surveillance CD.
 

 On the date of the incident, Patricia Charles (“Ms. Charles”) was working at a Subway restaurant across the street from the Rent-A-Center. Lieutenant Bruce Harrison (“Lieutenant Harrison”) of the Jefferson Parish Sheriffs Office was canvassing the area after the robbery and went to the Subway. He spoke with Ms. Charles, who told police that a male with a white T-shirt and blue shorts had walked into the store earlier and had just stood by
 
 *1095
 
 the fountain drinks. Ms. Charles recalled that, while he was in the restaurant, he spoke to a female deputy wearing a Jefferson Parish Sheriffs Office uniform who came in every day to get a salad. After customers left and the male remained in the restaurant without ordering anything, Ms. Charles picked up the phone, and he ran out.
 

 The police later learned the deputy who was at the Subway was Barbara Duskin. They spoke with her, and she recalled having a conversation with Butler while she was in line on the day of the robbery at Subway at approximately 1:20 p.m. She identified Butler by name and described him as wearing a white T-shirt and blue jean shorts.
 

 After learning the perpetrator’s name, a photographic lineup was prepared. The victims were separately shown the lineup on the same day as the robberies. Both Ms. Smith and Ms. Lindsey identified Butler as the person who robbed them. An arrest warrant was prepared for Butler, and officers went to Butler’s home, knocked on the door, and announced, “Police.” Before anyone opened the door of the house, the police heard a loud noise coming from the rear of the house, which proved to be Butler attempting to climb through the window. Lieutenant Harrison |r,ran to the back and yelled for Butler to drop the gun he had in his hand. After a brief struggle, Butler dropped the gun and was handcuffed.
 

 Sergeant John Carroll of the Jefferson Parish Sheriffs Office showed a still photograph of the robber inside of the RenWA-Center to Butler’s mother, grandmother, and a family friend. They identified Butler. The officers were given consent to search the house, but no evidence was recovered.
 

 At the detective bureau, after Butler was advised of his rights, he stated that he committed the robbery and explained he did it to pay off a drug debt. He also identified himself in the surveillance photograph.
 

 At trial, the State also presented evidence of Butler’s prior conviction on a charge of distribution of cocaine in support of the convicted felon in possession of a firearm charge. It was stipulated that Deputy Asha Simon, a fingerprint expert, examined fingerprints taken from Butler when he was convicted of the distribution of cocaine charge, compared it to the fingerprints taken two days earlier, and found a match.
 

 LAW AND ANALYSIS
 

 In brief to this Court, Butler assigns three errors for our review. In the first, he argues that his challenges for cause seeking to reject certain possible jury members were wrongfully denied. The arguments in this assignment relate to two specific jury panel members, Fredric Watson (“Mr. Watson”) and Ismer Akinci (“Mr. Akinci”). The defense attorney challenged both jurors for cause, arguing that neither juror could follow the law, and they were incapable of being fair and impartial. Both challenges were denied by the trial court. Consequently, the defense used peremptory challenges to remove the two jurors.
 

 The defense complaint against the prospective jurors is that the whole tone of their answers indicated that they expected the defendant to testify and would | r,hold it against him if he did not. Butler argues he used all of his allotted peremptory challenges, two of which were used on these jurors.
 

 The State agrees that Butler exhausted all of his peremptory challenges but responds that, after Mr. Watson was instructed on the law, he stated he could follow the law and would not be biased against a defendant who chose not to testify. The State further contends that, al
 
 *1096
 
 though Mr. Akinci initially stated a defendant should testify at trial, after being instructed on the law he stated he would follow the law and not hold defendant’s decision not to testify against him. The State adds that the other responses reflected the jurors’ ability to be impartial, and there was no evidence they were incapable of being unbiased or fair jurors. The State concludes that the trial court properly denied these challenges for cause, noting that both clearly exhibited an acceptance of the law and a willingness to follow the law as instructed.
 

 Under La.C.Cr.P. art. 797, a defendant may challenge a juror for cause if:
 

 (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
 

 (4) The juror will not accept the law as given to him by the court....
 

 The party seeking to exclude a juror for cause has the burden to demonstrate, through questioning, that the juror lacks impartiality.
 
 [1]
 
 A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably 17implied. A challenge for cause is not immediately warranted when a prospective juror has voiced an opinion seemingly prejudicial to the defendant. If after further inquiry the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence he may i*ehabilitated as a possible juror.
 
 [2]
 

 The trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will only be reversed when a review of the
 
 voir dire
 
 record as a whole reveals an abuse of discretion.
 
 [3]
 
 The trial court has the benefit of seeing facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to the questioning.
 
 [4]
 

 A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror.
 
 [5]
 
 In Louisiana, a defendant must use one of his peremptory challenges euratively to remove the juror, thus reducing his remaining peremptory challenges, or waive any complaint on appeal.
 
 [6]
 
 Prejudice is presumed when a challenge for cause is erroneously denied by the trial court and the defendant has exhausted his peremptory challenges.
 
 [7]
 
 A district court’s erroneous ruling that deprives a defendant of a peremptory challenge substantially violates that defendant’s rights and constitutes reversible error.
 
 [8]
 

 
 *1097
 
 In the present case, the trial court noted Butler’s objection after refusing to excuse both jurors for cause. Further, the record reflects that Butler made known his objections and explained his grounds for each challenge at the time he initially praised it. Butler asserts, and the State agrees, that all peremptory challenges were exhausted in the trial court. Thus, this issue is sufficiently preserved for ap--peal.
 

 Prospective juror Mr. Watson stated that he had never been on a jury before and that he and his family had not been victims of crime. Mr. Watson stated that there was no reason he could not serve as a fair and impartial juror in a criminal matter. The State explained to the group of potential jurors that the State had the burden and that it could not be held against a defendant if he did not take the stand. The State asked if anyone had a problem with that and received a negative response. The State asked if everyone could follow the law in that aspect, and the group gave an affirmative response.
 

 Mr. Watson stated that he believed he could follow the law and that Butler deserved his “due day.” The defense stated that a defendant was innocent at that point and would remain that way until the State convinced them that he committed a crime. Mr. Watson stated, “I can do that.” Defense counsel explained a defendant’s right against self-incrimination and how, if he chose to testify, the law provides it could not be held against him. Mr. Watson stated that he could not say one hundred percent that he would not hold it against Butler if he did not testify.
 

 Defense counsel challenged Mr. Watson for cause. He argued Mr. Watson should be excused because he could not say with one hundred percent certainty that he would not hold it against Butler if he did not testify. The trial judge suggested they bring Mr. Watson to the bench to discover his true feelings on whether or not he could follow the law in this regard. While at the bench, the trial judge explained to Mr. Watson that there was some question about his feelings on Butler not testifying and explained that the law provides a defendant has a right not to testify and that cannot be held against him. Mr. Watson stated that he understood. Mr. Watson stated he could not be one hundred percent sure, but then [9stated he could follow the law. Mr. Watson explained that he believed a defendant had something to hide by not testifying. The trial judge explained that he could wonder that in his mind but asked if he could follow the law and not hold it against Butler in making his decision. Mr. Watson stated he could follow the law. Defense counsel asked him with one hundred percent certainty, if defendant did not testify, if he would hold it against him. Mr. Watson stated, “I wouldn’t hold it against him.”
 

 After this questioning, defense counsel maintained the objection, noting that, although Mr. Watson changed what he said and that it could be that he misunderstood, his true feelings were what he stated the first time. The trial judge refused to excuse Mr. Watson for cause and noted the defense objection. The judge explained that Mr. Watson agreed that, although he may wonder in his mind why Butler did not testify, he could follow the law and not hold that against Butler. The defense used a peremptory challenge to strike Mr. Watson, and he was excused.
 

 Prospective juror Mr. Akinei stated that he had never served on a jury before, and he and his family had not been victims of crime. He stated that he did not know of a reason he could not serve as a fair and impartial juror in a criminal case. Mr. Akinei was in the same group of potential jurors as Mr. Watson and gave an affirmative response when asked if they could
 
 *1098
 
 follow the law pertaining to the presumption of innocence and the defendant’s right not to take the stand.
 

 When Mr. Akinci was asked if he could give Butler the presumption of innocence, he answered,
 
 “Not
 
 right now, because I have to see, really.” Defense counsel explained a defendant’s right against self-incrimination and how, if he chose not to testify, the law provides it could not be held against him. When asked if defendant did not testify if he would hold it against him, Mr. Akinci said, “I hope hnhe will testify. If he’s not, that’s out of the question. I will question myself.” Defense counsel asked if he could say with one-hundred percent certainty that, if Butler did not testify, he would not hold it against him. Mr. AJkinci answered, “Of course, I will, because he is supposed to admit it, he’s supposed to testify.” Defense counsel asked, “If he doesn’t testify, you’re going to hold it against him?” Mr. Akinci answered, “Right.”
 

 The defense challenged Mr. Akinci for cause, and Mr. Akinci was questioned at the bench. Mr. Akinci agreed that he understood the law was that a defendant did not have to take the stand and that he could follow the law, but that his “personal belief’ was that “sometimes you have to come to say what is going on.” Mr. Akinci again stated he understood the law and could follow the law. The trial judge sought clarification about his “personal belief,” and Mr. Akinci stated his personal belief was that an accused should take the stand. The trial judge explained that the law did not require a defendant to testify, and Mr. Akinci stated that he respected the law. He stated he would not hold it against Butler if the law said not to; he would follow the law.
 

 Defense counsel maintained his objection, explaining that he did not believe someone could be rehabilitated involving this issue. The trial judge refused to excuse Mr. Akinci on the defense challenge for cause, explaining that Mr. Akinci understood the distinction between his personal beliefs and his obligation to follow the law and stated more than once that he would follow the law regardless of his personal beliefs. Defense counsel’s objection was noted, and he used a peremptory challenge to strike Mr. Akinci.
 

 Although both Mr. Watson and Mr. Ak-inci originally expressed opinions about a defendant testifying that were seemingly prejudicial to Butler, after further inquiry, they were rehabilitated and demonstrated an ability and willingness to |n decide the case impartially according to the law and evidence. In such instances, a trial court does not abuse its discretion in denying a defense challenge for cause.
 
 [9]
 
 A trial court does not err in deeming the witness impartial when, upon the court’s further inquiry, the juror unequivocally demonstrated a willingness to decide the case on the evidence presented in accordance with the instructions as to law given the jury by the trial judge.
 
 [10]
 

 This Court has consistently followed the above reasoning in finding no abuse of discretion in the trial court’s acceptance of a potential juror who initially expressed doubts about a defendant’s choice to refuse to testify at trial and subsequently, on further inquiry, unequivocally demonstrates a willingness to apply the law and presumption of innocence as instructed.
 
 [11]
 

 
 *1099
 
 Accordingly, upon consideration of the entire
 
 voir dire
 
 transcript, we find no abuse of the trial court’s discretion in denying Butler’s challenges for cause as to Mr. Watson and Mr. Akinci.
 

 In his second assignment of error, Butler argues the trial court erred in failing to grant his motion for mistrial. The basis of this argument is that the trial court allowed the State to deviate from its assertions that it would not introduce new evidence from Ms. Charles not disclosed in the police report. Butler argues that he was told by the State, after the conclusion of jury selection, that Ms. Charles gave no formal statement to the police and did not identify him.
 

 However, Butler states that, during Ms. Charles’ testimony, the prosecutor wanted her to look at a photograph and identify Butler as being in the Subway around the time of the robbery. Further, Butler contends that he did not anticipate 112Ms. Charles’ change in testimony regarding her fear of being robbed. He argues he was prejudiced because he was deliberately misled and surprised by the State’s failure to disclose. He claims he was denied his right to a fair trial because he was lulled into a false appreciation of the strength of the State’s case and had no time to prepare for a proper cross-examination on such testimony.
 

 The State responds that the showing of a photograph to Ms. Charles at trial did not warrant a mistrial, nor did the photograph constitute any form of exculpatory evidence which should have been disclosed to the defense prior to trial. The State explains that the photograph was only shown at trial and had no bearing on the identification of Butler by the witnesses to the crime. It adds that Ms. Charles was not present at the robbery. The State concludes that Butler has failed to establish a basis for a mistrial, has failed to establish any misconduct or error on the part of the prosecutor, and has failed to establish that he suffered prejudice.
 

 The State, on a defendant’s motion, is required to produce documents and tangible objects within its possession, custody or control that are intended for use by the State as evidence at trial or that are favorable to the defendant and which are material and relevant to the issue of guilt or punishment.
 
 [12]
 
 The State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial.
 
 [13]
 

 When a party to a criminal proceeding fails to comply with the provisions of the discovery articles, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, | ijjOr enter such other order, other than dismissal, as may be appropriate.
 
 [14]
 
 Mistrial is only one of the remedies available to the trial court in redressing a discovery violation, and it is warranted only when an error results in substantial prejudice to the defendant.
 
 [15]
 

 The rules of discovery are intended to eliminate unwarranted prejudice arising from surprise testimony to allow
 
 *1100
 
 the defense to meet the State’s case, and to allow proper assessment of the strength of its evidence in preparing a defense. Basic unfairness results when a defendant is lulled into misapprehension of the strength of the State’s case through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice. This constitutes reversible error.
 
 [16]
 
 However, the failure of the State to comply with discovery rules does not bring about automatic reversal. A defendant must make a showing of prejudice.
 
 [17]
 

 After jury selection, the defense questioned the State as to whether Ms. Charles made any identification or statements to the police. The State provided the information that Ms. Charles had spoken to the police, but did not give a recorded statement. The defense asked if she made an identification, and the State responded that she had not.
 

 During trial, the State attempted to show Ms. Charles a photograph taken from the CD of the robbery. The defense objected and a bench conference was held. The defense argued that Ms. Charles was not presented a photographic lineup prior to trial and the photograph was overly suggestive. The State informed the court that Ms. Charles had seen the photograph that morning. The defense argued that, because the police report did not include Ms. Charles’ amplified testimony about panicking when Butler left and only a description of him wasJjjincluded in the police report, it would be prejudiced by the trial court’s allowing the State to proceed. The defense also argued it was assured by the State that there was nothing other than what was in the police report. The trial court sustained the defense objection, and there was no identification made by Ms. Charles and no questions were asked regarding this photograph. However, the defense moved for a mistrial because of the “preliminary questions” already heard by the jury. The defense argued cross-examination had to be reconsidered and the State knew this should have been done pretrial.
 

 At trial, Ms. Charles did testify that she panicked and picked up the phone. Although Butler argues on appeal that Ms. Charles’ testimony changed radically when she testified that she was afraid of being robbed, the portions of the transcript Butler cites in support of this do not reflect such testimony. On cross-examination, when asked if she told anyone that someone tried to rob her, Ms. Charles responded that she had said that someone came into Subway and stood by the fountain drinks without saying or doing anything. She stated that when she picked up the phone, he left. In fact, when asked, she denied that she told the police she panicked when the person left.
 

 In the present case, even assuming any of Ms. Charles’ testimony indicated to the jury that she feared she may be robbed, there’s nothing to suggest that the State had knowledge of this testimony pri- or to trial. The State has no obligation to disclose information it does not possess.
 
 [18]
 

 It was never established that the State intended to mention the identification the morning of jury selection, and the jury never heard of any identification of Butler made by Ms. Charles. Ms. Charles did not make an identification at trial when the defense objection was sustained. The State attempted to present a [^photograph of Butler to Ms. Charles that was taken from the video surveillance. The prosecutor stated, “And, Ms. Charles, I’m going to
 
 *1101
 
 show you what’s been previously marked as State’s Exhibit # 3.” Although the defense attorney claimed he needed to rethink cross-examination, he did not indicate that he needed more time to prepare a defense by requesting a continuance.
 
 [19]
 

 On appeal, Butler argues that he was told by the State that Ms. Charles would not be asked questions outside of the police report. Butler argues he had a reasonable expectation that he could rely upon the prosecutor’s assurances that Ms. Charles would not be asked to identify him. However, the record does not reflect such assurances. After jury selection, the defense asked if Ms. Charles made an identification, and the State responded that she had not. At this time, the defense also acknowledged it had open file discovery.
 

 Although Butler also seemed to argue that the one-on-one identification at trial was highly improper and unduly suggestive, the record shows no identification occurred. Furthermore, even though Ms. Charles was not a witness at the motion to suppress the identification hearing and did not identify Butler pretrial, a pre-trial identification is not a prerequisite to an in-court identification.
 
 [20]
 

 We also note that Butler has not demonstrated that he has been prejudiced because of the alleged discovery violation. Even if Ms. Charles had indicated that she was afraid Butler would rob her, the State had already presented testimony of the victims, Ms. Smith and Ms. Lindsey, who testified that Butler had robbed them. The victims also identified Butler.
 

 The jury never learned of an identification made by Ms. Charles. The defense objection was sustained, and Ms. Charles did not identify Butler as the individual in the photograph. Further, there was no showing of any prejudice to | ^Butler. Based on these circumstances of this matter, we find no merit in Butler’s argument that the trial court erred in denying a mistrial.
 

 In his final assignment of error, Butler argues that the trial court erred in denying his motion to sever count three (felon in possession of a firearm) from the two counts of armed robbery. He argues the motion for severance should have been granted because of the prejudice inherent in trying the multiple counts together, especially when the guns in the crimes were not the same. Butler asserts this was prejudicial and confusing to the jury, who could not have considered each offense separately and would have inferred that he had a criminal disposition.
 

 The State responds that the counts were properly joined. It contends Butler was found in possession of the gun on the same day of the robbery when he was being arrested for the robberies, the counts were triable by the same mode of trial, were of similar character, and the facts of each offense were simple and uncomplicated.
 

 Offenses that are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan can be joined, provided the offenses are triable by the same mode of trial.
 
 [21]
 
 In the instant case, the charged offenses were connected together by the same underlying facts and occurred on the same date. The police discovered Butler in possession of a gun when they went to arrest him for
 
 *1102
 
 the armed robberies that happened earlier that day. Additionally, because all offenses are necessarily punishable by hard labor,
 
 [22]
 
 they are triable by the same mode of trial. Constitutionally, a conviction on each of the crimes |17charged required a trial before a twelve-person jury, ten of whom were required to agree on a verdict.
 
 [23]
 

 Nevertheless, a defendant properly charged in the same indictment with two or more offenses in accordance with the law may move for a severance of the offenses.
 
 [24]
 
 A trial court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
 
 [25]
 
 A severance is not mandated simply because the offense would not be admissible at the separate trial of the other if the defendant is not prejudiced by the joinder.
 
 [26]
 
 No prejudicial effect occurs where the evidence as to each offense is simple and distinct and where, with proper jury charging, the jury can easily keep the evidence in each offense separate in its deliberations.
 
 [27]
 

 In ruling on a motion to sever offenses, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources.
 
 [28]
 
 In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
 
 [29]
 

 [1RIn its determination of whether charged offenses should be severed for trial, the trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense.
 
 [30]
 
 However, the fact that evidence of one of the charges would not be admissible under
 
 Prieur
 
 in a separate trial on the joined offense, does not, per se, prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible.
 
 [31]
 
 The Louisiana Supreme Court requires a close connexity of res gestae or integral act evidence to insure that the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.
 
 [32]
 

 
 *1103
 
 The defendant has a heavy burden of proof when he alleges prejudicial joinder.
 
 [33]
 
 A motion to sever is addressed to the sound discretion of the trial court and the ruling should not be disturbed on appeal absent a showing of an abuse of discretion.
 
 [34]
 

 In the present case, Butler moved the court to sever the offenses for trial. He wanted count three, the felon in possession of a firearm charge, severed because the firearm was not the same firearm used in the robbery, and he wanted to avoid the introduction of evidence of the prior conviction for distribution of cocaine. After hearing arguments, the court denied the motion. The trial judge recognized his discretion and stated that he believed Butler could be provided appropriate relief based upon his claims of prejudice through jury instruction and by argument of counsel. The trial judge further stated that, because the gun was different, it could possibly benefit, rather than prejudice, defendant.
 

 [190n appeal, Butler complains the trial court abused its discretion in denying his severance motion. He argues that trying the charges together made it impossible for him to receive a fair trial because they were prejudicial and confusing. Butler also argues the jury could not have considered each offense separately, and that the jury relied on the gun charge to validate the robbery charge, precluding the jury from considering mitigating evidence.
 

 On appeal, Butler focuses his argument on the fact that count three involved a gun, and it was a different gun than what was used in the armed robberies. He does not rely much on prejudice regarding the evidence of the prior conviction for distribution of cocaine. Butler concludes that he was prejudiced by the joinder because the charges were confusing and could not be considered separately. He states that the jury inferred he had a criminal disposition by relying on the gun charge to validate the robbery charge, without considering mitigating evidence.
 

 We do not find that Butler provided facts to support these conclusions. Factual, rather than conclusory, allegations are required when a defendant alleges prejudicial joinder of offenses as a ground for a motion to sever.
 
 [35]
 

 As a general rule, evidence of criminal conduct that takes place in a series of events is admissible at the trial of one of the offenses.
 
 [36]
 
 Any time the State introduces evidence of other criminal activity by the accused, the possibility exists that the trier of fact will be affected to some degree by the evidence; for that reason, the State must be mindful of the circumstances in which it elects to try a charge of felon in possession of a firearm with other substantive offenses to insure that justice is served. Nevertheless, there is no absolute ban on the introduction of | gpevidence of other unrelated crimes, including felony convictions. Instead, statutory and jurisprudential guidelines establish the circumstances under which this evidence is admissible.
 
 [37]
 

 
 *1104
 
 We do not agree that the jury’s knowledge of Butler’s prior conviction for distribution of cocaine would necessarily make the panel believe it more likely that Butler committed the anned robberies. The pri- or conviction was a drug charge, not an armed robbery. Further, the evidence presented at trial made clear that the gun Butler was found in possession of was different than the gun that was used in the armed robberies. At trial, one of the robbery victims, Ms. Lindsey, was shown the gun Butler had when he was arrested, and she testified that it was not the gun used to rob her. Lieutenant Harrison also testified he thought the gun Butler had at the time of the arrest was a different gun than the one used in the robbery. Further, the jury was able to observe the gun and also saw the CD and photographs from the robbery. They could have made their own conclusions about the difference in the guns.
 

 The facts of each offense with which Butler was charged were simple and uncomplicated. The evidence for each crime was presented separately with each victim testifying regarding their robbery. As for the convicted felon in possession of a firearm charge, a stipulation was entered into by the parties as to the testimony of a fingerprint expert and documentation of the prior conviction was introduced as an exhibit. The story of how Butler was arrested for the armed robberies necessarily includes that he was attempting to leave the house while in possession of a gun when the officers went to his address to arrest him. The evidence presented at trial through testimony and photographs reflect that the gun used in the robberies was not the same gun Butler was found in possession of just prior to |21his arrest. We believe the jury would have been able to segregate the various charges and offenses, and there is no indication in the record that the charged offenses made the jury hostile to Butler.
 

 The evidence of the armed robberies in this case was overwhelming. Both victims of the robberies testified regarding the incident and identified Butler as the robber. Surveillance, as well as photographs compiled from the surveillance, captured the incident. Butler’s family members identified Butler in a photograph taken from the surveillance, and Butler confirmed that identification. Further, Butler confessed.
 

 We find Butler’s arguments regarding this assignment of error to be without merit.
 

 Upon review of the record for errors patent,
 
 [38]
 
 we have found there are discrepancies in the commitment and transcript regarding defendant’s sentences. The transcript prevails when there is a discrepancy between the commitment and the transcript.
 
 [39]
 
 According to the transcript, the trial court sentenced defendant to forty-nine and one-half years of imprisonment at hard labor for each count of armed robbery without benefit of parole, probation, or suspension of sentence, to run concurrently with each other. For the possession of a firearm by a convicted felon conviction, defendant was sentenced to fifteen years of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, to run concurrently with any other sentence he might be serving. The trial judge also ordered defendant to pay a fine of $1000.
 

 
 *1105
 
 The commitment, however, does not reflect that the fifteen-year sentence was ordered to be served at hard labor. Additionally, it does not reflect that the farmed robbery sentences were to be served without the benefit of parole, probation, or suspension of sentence. Further, the commitment reflects that defendant’s sentence was ordered to run concurrently with any sentence he was already serving and lists several case numbers. The transcript did not list any specific case numbers. Additionally, the commitment does not reflect that the trial judge imposed a $1000 fine as is reflected in the transcript.
 

 The multiple bill commitment also lists specific case numbers with which defendant’s sentence would run concurrently, while the transcript only reflects his sentence was ordered to run concurrently with any other sentence he might be serving. It is also noted that the multiple bill commitment does not reflect that defendant was a second felony offender and only reflects defendant was sentenced under the multiple bill statute.
 

 We hereby remand this matter for correction of the commitments to reflect the minutes accurately. We also remand for correction of the commitment to show that Butler was sentenced on the multiple bill as a second felony offender.
 
 [40]
 
 We order the district court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entries to the officer in charge of the institution to which the defendant has been sentenced.
 

 In conclusion, we affirm defendant’s convictions and sentences, and we remand the matter to the trial court with orders to correct the commitments as discussed herein and to make the necessary entries in the minutes to reflect these changes.
 

 AFFIRMED AND REMANDED WITH ORDER.
 

 [1]
 

 .
 
 State v. Taylor,
 
 99-1311 (La.1/17/01), 781 So.2d 1205, 1218,
 
 cert. denied,
 
 534 U.S. 844, 122 S.Ct. 106, 151 L.Ed.2d 64 (2001).
 

 [2]
 

 .
 
 State v. Strickland,
 
 04-843 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 895,
 
 writ denied,
 
 05-0820 (La.6/17/05), 904 So.2d 683.
 

 [3]
 

 .
 
 Id.
 

 [4]
 

 . State v. Anthony,
 
 98-0406, p. 22 (La.4/11/00), 776 So.2d 376, 392.
 

 [5]
 

 . La.C.Cr.P. art. 800(A).
 

 [6]
 

 .
 
 State v. Blank,
 
 04-0204 (La.4/11/07), 955 So.2d 90, 113-14,
 
 cert. denied,
 
 - U.S. -, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
 

 [7]
 

 .
 
 State v. Lindsey,
 
 06-255, p. 2 (La.1/17/07), 948 So.2d 105, 107.
 

 [8]
 

 .
 
 Id.
 

 [9]
 

 .
 
 State v. Abney,
 
 347 So.2d 498, 501 (La.1977).
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 State v. Bush,
 
 02-0247 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 866-67,
 
 writ denied,
 
 02-1887 (La.1/24/03), 836 So.2d 42;
 
 State v. Eugene,
 
 03-1336 (La.App. 5 Cir. 3/30/04), 871 So.2d 584, 587-88,
 
 writ denied,
 
 04-1080 (La.11/15/04), 888 So.2d 766;
 
 State v. Mickel,
 
 07-47 (La.App. 5 Cir. 5/29/07), 961 So.2d 516,
 
 *1099
 
 523-24,
 
 writ denied,
 
 07-1422 (La.1/7/08), 973 So.2d 732.
 

 [12]
 

 . La.C.Cr.P. art. 718.
 

 [13]
 

 .
 
 State v. Chaplain,
 
 03-0338 (La.App. 5 Cir. 7/29/03), 852 So.2d 1088, 1089 (citing La. C.Cr.P. art. 729.3).
 

 [14]
 

 . La.C.Cr.P. art. 729.5(A);
 
 Chaplain,
 
 03-0338, 852 So.2d at 1089 (quotations omitted).
 

 [15]
 

 .
 
 See, State v. Harris,
 
 00-3459 (La.2/26/02), 812 So.2d 612, 617.
 

 [16]
 

 .
 
 Id.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 .
 
 State v. McGinnis,
 
 04-1286 (La.App. 5 Cir. 10/6/05), 917 So.2d 471, 485,
 
 writ denied,
 
 05-2469 (La.4/28/06), 927 So.2d 283.
 

 [19]
 

 .
 
 See, State v. Chaplain,
 
 03-0388 (La.App. 5 Cir. 7/29/03), 852 So.2d 1088, 1090.
 

 [20]
 

 .
 
 State
 
 v.
 
 Long,
 
 408 So.2d 1221, 1225 (La.1982).
 

 [21]
 

 . La.C.Cr.P. art. 493.
 

 [22]
 

 . La. R.S. 14:64 and La. R.S. 14:95.1.
 

 [23]
 

 .
 
 See,
 
 La. Const. art. I, § 17; LSA-C.Cr.P. art. 782(A).
 

 [24]
 

 . La.C.Cr.P. art. 495.1.
 

 [25]
 

 .
 
 Id.
 

 [26]
 

 .
 
 State v. Celestine,
 
 452 So.2d 676, 680 (La.1984).
 

 [27]
 

 .
 
 Id.
 

 [28]
 

 .
 
 State v. Deruise,
 
 98-0541 (La.4/3/01), 802 So.2d 1224, 1232,
 
 cert. denied,
 
 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
 

 [29]
 

 .
 
 State v. Williams,
 
 05-317 (La.App. 5 Cir. 11/29/05), 918 So.2d 466, 478,
 
 writ denied,
 
 06-0638 (La.10/6/06), 938 So.2d 64.
 

 [30]
 

 .
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), and La. C.E. art. 404(B)(1);
 
 State v. Lyles,
 
 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 45
 

 [31]
 

 .
 
 Deruise,
 
 98-0541, 802 So.2d at 1232.
 

 [32]
 

 .
 
 State v. Noten,
 
 01-1818 (La.6/25/01), 791 So.2d 607, 608-09 (per curiam) (quotation omitted).
 

 [33]
 

 .
 
 Williams,
 
 05-317, 918 So.2d at 478.
 

 [34]
 

 .
 
 Deruise,
 
 98-0541, 802 So.2d at 1232.
 

 [35]
 

 .
 
 State v. Davis,
 
 92-1623 (La.5/23/94), 637 So.2d 1012, 1019,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
 

 [36]
 

 .
 
 See,
 
 La. C.E. art. 404(B).
 
 See also, State v. Morris,
 
 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 914,
 
 writ denied,
 
 00-3293 (La.10/12/01), 799 So.2d 496,
 
 cert. denied,
 
 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
 

 [37]
 

 .
 
 Morris,
 
 99-3075, 770 So.2d at 914.
 
 See also,
 
 La. C.E. arts. 403; 404(B).
 

 [38]
 

 . This Court routinely conducts a review of the record for errors patent in accordance with La.C.Cr.P. art. 920 and
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975).
 

 [39]
 

 .
 
 State
 
 v.
 
 Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 [40]
 

 .
 
 State v. Defrene,
 
 07-823 (La.App. 5 Cir. 2/19/08), 980 So.2d 31, 34.