CLARENCE E. McMANUS, Judge.
laDefendant, Brian Massey, now appeals his convictions of second degree murder and felon in possession of a firearm. For the reasons which follow, we affirm defendant’s convictions and sentences.

STATEMENT OF THE CASE

On January 25, 2007, a Jefferson Parish Grand Jury returned an indictment charging defendant, Brian K. Massey, with the second degree murder of Harold Bush, alleged to have occurred on November 24, 2006, in violation of LSA-R.S. 14:30.1. Co-defendant, Eric B. Massey, defendant’s brother, was also charged with the second degree murder of Harold Bush in the same indictment. Defendant was arraigned on January 30, 2007, and pled not guilty. Defendant then filed several pre-trial motions, including motions to suppress evidence and identification, and a motion to sever the defendants for trial, all of which were denied.
On August 12, 2010, the State filed an amending and superseding bill of indictment adding a second charge against defendant for being a convicted felon in possession of a firearm, a violation of LSA-R.S. 14:95.1. Defendant was arraigned and entered a plea of not guilty to the amended charge. Defendant was advised of Lhis right to a trial by jury as to the amended charge, which defendant waived. On August 24, 2010, defendant proceeded simultaneously with a jury trial as to count one, and a judge trial as to count two. The trial court found defendant guilty as charged as to count two, convicted felon in possession of a firearm. A jury of 12 found both the defendant and his brother, Eric Massey, guilty as charged as to count one, second degree murder
On September 9, 2010, defendant filed a motion for new trial, which the trial court denied. Subsequently, the trial court sentenced defendant to life imprisonment without the benefit of parole, probation, or suspension of sentence on count one, and to 15 years at hard labor as to count two, to run concurrently to count one and consecutively to any other sentence defendant was presently serving. On September 10, 2010, defendant filed a motion for appeal which was granted by the trial court. The defendant now timely appeals his conviction.

FACTS

The following facts were elicited at the trial of this matter. On October 12, 2006, approximately a month and a half before the murder of Harold Bush, the defendant was involved in a shooting in which he was shot in the foot. The individual who shot the defendant was never arrested, however the defendant believed a man by the name of Johnny Bush, either a cousin or brother of the murder victim, had shot him.
Two days prior to the murder, on November 22, 2006, a second shooting occurred at the Beachgrove Apartments. One of the gunshot victims was identified as Emmanuel Massey, a relative of the defendant, and the other gunshot victim was identified as Lee January, an “associate” of the defendant. The defendant was on the scene of the shooting at the time detectives arrived, and given his relationship to the victims, he was believed to be a witness to the shooting.
|4On November 24, 2006, Harold Bush was shot and killed. At trial, the State presented the eyewitness testimony of Courtney Washington. Washington testified that she had known the defendant and his brother, Eric Massey, since 2004. *19 Washington testified that shortly after the defendant was released from the hospital for the gunshot wound he sustained to his foot, and prior to the murder of Bush, she saw the defendant, his brother Eric Massey, and a man named Delance in Elliott’s Gun Shop buying bullets and clips.
At the time of the murder, Washington was living in a FEMA trailer in the Davis Development in Westwego. Washington testified that on November 24, 2006, she had seen Bush and a man by the name of Brindell in the neighborhood. After meeting up with them at a neighbor’s house, Washington testified that Bush and Brin-dell eventually left and headed down Emile Street through a “cut” between Dolly and Heather Streets to go buy some “weed” while she stayed behind. When she began to walk back to her trailer around 6:00 p.m., she saw a white truck which she described as “[n]ot like a Ford F150 or something like that ... [i]t was smaller than a suburban truck,” driving slowly down the street. Washington testified that she could see the defendant driving, with co-defendant, Eric Massey, in the front passenger seat, and another person by the name of Delance also in the vehicle. When she observed the defendant and Eric Massey driving down the street she hid behind a bush so they could not see her because she was scared. Washington then testified that after crossing the street and climbing the stairs to her trailer, she heard four gunshots. Upon hearing the gunshots she looked towards Emile Street, down Dolly Street, and observed the Massey vehicle stopped in the middle of the street and the defendant, Eric Massey, Delance, and Bush standing on the corner of Dolly and Emile.
IsWashington then testified that she observed the defendant holding a weapon she described as “[a] big one, like a long one. Probably a little longer than my arm,” and Eric Massey holding “a small one.” Also, after turning around, Washington stated that she saw “fire” coming from the gun the defendant was holding while he shot at Bush. Washington also stated that she saw the defendant lean over Bush, looking like he was “making to spit,” before they got back into the white vehicle and sped off.
Once the police arrived, Washington positively identified the victim for them as Harold Bush. Washington stated that she did not tell the police what she had witnessed that evening because she was scared of the Massey brothers and their friends.
Eventually, Washington did tell the police that she had witnessed the murder. She provided a statement to the lead investigator, Detective Morales, which included a positive identification of the defendant and Eric Massey from two photographic line-ups that were presented to her.
Dr. Susan Garcia, of the Jefferson Parish Coroner’s Office, was qualified as an expert in the field of forensic pathology, and testified that she performed the autopsy on the victim the day after his murder. Dr. Garcia testified that the victim sustained eight gunshot wounds to his body, some of which caused lethal injury to multiple organ systems in his abdomen. Upon performing the autopsy, Dr. Garcia stated that one deformed intact projectile was recovered from the victim’s left thigh, and some projectile fragments were recovered from various parts of the victim’s body. Dr. Garcia also noted that the “gaping” exit wound on the victim’s shoulder was characteristic of a high-powered weapon. Dr. Garcia classified the manner of death as a homicide.
|f,Next, Deputy Wade Hotard of the Jefferson Parish Sheriffs Office, testified that on November 24, 2006, at approximately *20 6:14 p.m., he was dispatched to the corner of Dolly and Emile Streets, the scene of a homicide. Around the vicinity of the victim’s body, Deputy Hotard testified that he observed several 7.62 caliber shell casings, and one 9 mm shell casing. Subsequent to Deputy Hotard’s arrival on the scene, a witness, later identified as Ms. Sherman Davis, identified the victim as Harold Bush.
Captain Dennis Thorton, of the Jefferson Parish Sheriffs Office Homicide Division, testified that on the evening of November 24, 2006, he responded to a homicide on Dolly and Emile Streets in Westwego. As the supervisor of the crime scene investigation, Captain Thor-ton recounted the evidence recovered and documented at the crime scene, which included, six bullet casings from a 7.62 by 39 mm weapon, likely an SKS or AK47 assault rifle, and one bullet casing from a 9 mm semiautomatic handgun. Captain Thorton further testified that no weapons were recovered at the scene or on the victim’s person. Additionally, a gunshot residue test performed on the victim’s hands was negative. After Captain Thor-ton concluded his investigation and supervision of the crime scene, the case was turned over to case officer Detective David Morales.
Detective David Morales testified that on November 24, 2006, he was employed as a detective for the Jefferson Parish Sheriffs Office and participated in the investigation pertaining to the homicide of Harold Bush. After speaking with his supervisor, Lieutenant Steve Buras, about the homicide that had occurred the evening before, Detective Morales went to 7205 Angela Street, two blocks from the crime scene, to speak with the victim’s aunt, Sherman Davis. Detective Morales spoke with both Davis and the victim’s brother, Jonathan Bush (a.k.a. “Johnny”) and as a result of his conversations with them, proceeded to an area 17known as the Beachgrove Apartments. Detective Morales learned that the victim had been living at 753 Beachgrove, Apartment D, and upon his arrival he spoke to Michelle Harris and Cedric Clinton. From Harris and Clinton, Detective Morales learned that the victim had been with a man by the name of Ron Sherman, also known as “LA,” at the time he was killed. Sherman agreed to meet with Detective Morales and provide a statement regarding the homicide but was unable to identify the individuals who had shot the victim.
A few days later, after receiving a phone call from another detective regarding a potential witness in the case, Detective Morales interviewed and took a recorded statement from Gerald Barker regarding the homicide. Detective Morales testified that Barker was presented with two-photographic line-ups, which contained the defendant, and co-defendant, Eric Massey. Based upon the information gained from Barker, including the interview and photographic line-up, Detective Morales secured arrest warrants for Brian and Eric Massey for the murder of Harold Bush, and three search warrants.
Detective Morales stated that while proceeding with Detective Jeffrey Rodrigue towards 2120 Constantine in Marrero to execute one of the search warrants, they were advised that the defendant, co-defendant, and a female by the name of Shauna Hamilton, had left 2120 Constantine and were traveling in a red Pontiac Grand Am along Betty Street toward Lapalco. The defendant was driving with his girlfriend, Shauna Hamilton, in the front passenger seat, and Eric Massey in the back seat, directly behind the defendant. After officers stopped the vehicle, both the defendant and Eric Massey were arrested and a loaded 9 mm pistol was retrieved from the *21 seat pouch directly in front of where Eric Massey was seated. ■ A second 9 mm handgun was recovered from the defendant’s person, however, this handgun was not connected to the shooting of the victim.
IsFollowing the arrest of the defendant and Eric Massey, Detective Morales executed the search warrant at 2120 Constantine. Upon entering the house, detectives encountered Emmanuel Massey, nephew of Brian and Eric Massey, who had been the victim of the shooting at the Bea-chgrove Apartments two days prior to the subject murder. Detective Morales seized several items from inside the home’s master bedroom including a U-Haul self-storage rental contract in the defendant’s name, an ID-card belonging to Shauna Hamilton, correspondence addressed to the defendant, and thirty 7.62 by 39 caliber live cartridges concealed behind the bed’s headboard. Detective Morales also executed a search warrant at 2078 Mathers Drive in Marrero, believed to be the Massey family home, however, nothing of evi-dentiary value was found.
On December 10, 2006, Detective Morales was contacted by Officer Gary Bar-teige, who was handling a domestic violence complaint in the Waggaman area of Jefferson Parish, when he learned that the domestic violence victim, Courtney Washington, may have knowledge regarding the murder of Harold Bush. Detective Morales testified that he interviewed Washington concerning the homicide of Bush, who indicated that she had witnessed the murder. During the interview, Washington was presented with the same two photographic line-ups shown to Barker, which contained a picture of the defendant and Eric Massey.
Next, Detective Jewell testified that he participated in the arrest of the defendant and Eric Massey. At the time of their arrest, Detective Jewell performed a cursory search of the vehicle and in the pouch that had been sewn into the back of the driver’s seat, directly in front of where Eric Massey had been seated, he seized a black pistol.
Louise Walzer, senior crime examiner, who was employed by the Jefferson Parish Sheriffs Office Crime Laboratory at the time of the subject incident, ^testified on behalf of the State. After being qualified as an expert in the field of firearms examination, Walzer testified that she completed a comparison of the six 7.62 by 39 mm fired cartridge casings recovered at the scene and determined that they were all fired from the same weapon, either an AK-47 or SKS. Next, Walzer testified that after comparing the 9 mm gun, retrieved from the pouch in the red Pontiac at the time of Brian and Eric Massey’s arrest, to the 9 mm CBC casing found at the scene and the copper-jacketed bullet retrieved from the body of the victim, she concluded that the casing and bullet had been fired from the 9 mm weapon collected from the red Pontiac. Finally, Walzer testified that the live ammunition taken from the 9 mm pistol recovered from the seat pouch at the time of defendant’s arrest contained CBC live cartridges.
A DNA analysis of the 9 mm recovered from the pouch inside the red Pontiac was also performed. Connie Brown, expert in the field of forensic DNA analysis, testified that the trigger of the 9 mm pistol contained a mixture of DNA from at least two individuals, however, due to the limited quantity of DNA sample, no conclusions could be made regarding the inclusion or exclusion of the defendant or Eric Massey. Additionally, after comparing the DNA profile from the slide of the 9 mm with that of the defendant and Eric Massey, it was concluded that there was a mixture of DNA from at least two individuals present. However, Brown further testified that no *22 conclusions could be made regarding the inclusion or exclusion of the defendant due to the limited quality of the sample. Although, Brown also testified that Eric Massey fell within the .1 percent of the Caucasian, African-American, and Hispanic population that could not be excluded as possible contributors of the DNA mixture.
Lastly, Deputy Candice Emmanuel, assigned to the special investigation unit of the corrections center, testified that it is her responsibility to monitor and | ^maintain the electronic system which records phone calls placed by inmates at the correctional facility. Deputy Emmanuel testified that pursuant to a subpoena received by the State, she prepared a compact disc of the defendant’s recorded telephone conversations. The State then played a telephone conversation recorded on April 23, 2010, between the defendant and his father. During the conversation, the defendant was heard telling his father to meet up with “LA” and to tell “LA” to go to his lawyer and give a recorded statement saying “that it wasn’t me and Brad who did that s* * *. Because he [LA] made a statement and he made the statement saying that he ... can’t identify the people who did it. But he said that he saw who did it, but he can’t identify them. He can identify me and Brad because he know us.... So all you got to do is let me lawyer record him on a tape saying it wasn’t Brad and Brian who did that, and they going to drop the f* * * * *g charges.... Tell that n* * * *r I got $500.00 and all for him just saying that, fool.”
The State rested and the defense called Carolyn Van Winkle, employed by the Tar-rant County Medical Examiner and Crimi-nalist Laboratories in Fort Worth, Texas, to the stand. Van Winkle was qualified as an expert in the field of forensic DNA analysis, and testified that the DNA results from the slide of the 9 mm retrieved from the pouch in the red Pontiac was inconclusive as to Eric Massey. Van Winkle also testified that both the defendant and Eric Massey were excluded as major contributors of the DNA found on the slide of the 9 mm handgun. Van Winkle further testified that the quality of work performed by Brown, the State’s DNA expert analyst, was excellent, however, she disagreed with Brown’s conclusions and use of statistical analysis by providing an alternative way to analyze the level of data in this case.
| ^ASSIGNMENT OF ERROR NUMBER ONE
On appeal, defendant first contends that the trial court erred in denying his motion to suppress the gun recovered from the red Pontiac, a vehicle which had no connection to the scene of the homicide and thus, could not have led the officers to reasonably believe that evidence relevant to the crime of the arrest might be found. Additionally, defendant asserts that the warrantless search of the red Pontiac, and its hidden compartments, which was conducted while the defendant and its other occupants were under arrest, handcuffed, and under armed guard, was unconstitutional. Finally, the defendant argues that the automobile exception does not justify the warrantless search conducted in this case.
Because this matter was litigated during the course of pre-trial proceedings, the State argues that the doctrine of “law of the case” is applicable and thus, this Court should decline further review. Nevertheless, the State submits that should reconsideration of this issue be afforded, relief would not be warranted because the trial court record does not establish that this Court’s previous determination was patently erroneous and/or produced an unjust *23 result. Additionally, the State, in the alternative, argues that even if it was not reasonable for the officers to believe that evidence of the murder would be found in the defendant’s vehicle pursuant to the requirements set forth in Gant, if the officers were acting upon applicable binding precedent at the time of the search, the evidence seized is not subject to the exclusionary rule. Finally, the State contends that application of the automobile exception to the warrant requirement further justified the search.
The suppression hearings on defendant’s motion to suppress were held on July 15, 2009 and September 24, 2009. Detective David Morales testified that he learned that a white Toyota SUV was the vehicle that the perpetrators were in at the time of the murder. He further testified that in the course of his investigation of | iathe murder of Bush, the defendant and Eric Massey were developed as possible suspects. Thus, he obtained search warrants for property related to the suspects, which contained a list of specific items including: any and all firearms that fired 7.62 by 39 cartridges or component parts of same; all 7.62 by 39 and 9 mm ammunition; and any and all firearms that fired 9 mm caliber cartridges or component parts of same.
One of the search warrants obtained was for 2120 Constantine Street, and Detective Morales testified that upon execution of the warrant, several items were seized including an SKS semi-automatic rifle with a magazine that was 7.62 by 39 caliber, and a contract with a lock receipt for a U-Haul unit. Detective Morales further testified that a second search warrant for 2076 Mathers Drive in Marrero was executed; however, no evidence was collected from that location. Finally, the third search warrant, for the U-Haul facility, was executed and seven ounces of crack cocaine was seized.
When Detective Morales obtained the warrants, he advised Lieutenant Robert Gerdes, who was conducting a surveillance of 2120 Constantine at the time, that he had obtained a search warrant for 2120 Constantine, and an arrest warrant for the defendant and Eric Massey for the first degree murder of Bush, in which there were two weapons used including a 9 mm handgun and an AK 47. Lieutenant Gerdes was also informed that cars may have been involved in the shooting.
Detective Daniel Jewell also testified that he, and other officers, were conducting a surveillance of 2120 Constantine and were tasked with arresting the defendant and Eric Massey for the murder of Bush in which an assault rifle and a 9mm handgun were used. They were also made aware that a vehicle had been used in the shooting of Bush.
[ isThe defendant and Eric Massey were seen leaving 2120 Constantine in a red Pontiac that had been parked at that address prior to their arrest. Thus, Detective Jewell testified that they stopped the red Pontiac at the intersection of Betty and Lapalco, removed Eric Massey from the rear driver’s side of the vehicle, and placed him in handcuffs while Detectives Cursain and Latour removed the defendant from the vehicle.
Detective Jewell further testified that pursuant to seizing contraband from the suspects, he performed a cursory search of the vehicle where Eric Massey had been seated and found a 9mm pistol in a pocket behind the driver’s seat. Detective Jewell explained that the pocket where the gun was found was not a “locked container,” however, he did have to pull the pocket away to reveal the gun. Detective Jewell also testified that he did not remove the gun at that point, but after determining that no one else was present inside the vehicle, deemed the vehicle safe. At the *24 time of the search, Detective Jewell stated that the suspects were fully under control, in handcuffs, and were not resisting.
The trial court denied the motion to suppress on October 30, 2009. Thereafter, defendant filed a timely writ application with this Court challenging the trial court’s ruling on the motion to suppress. This Court granted review but denied relief, finding as follows:
In this writ application, Eric Massey seeks review of the trial court’s denial of his motion to suppress evidence obtained after his arrest on a valid warrant. In support of this argument, relator cites Arizona v. Gant, [556] U.S. [332], 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In Gant, defendant was arrested for driving with a suspended license and placed in the back of a patrol car. When officers searched his vehicle, they found cocaine in a jacket in the back seat. Id. at 1714. In those circumstances, the supreme court deemed the warrantless search of Gant’s vehicle inappropriate because the authorities “could not reasonably have believed” that evidence of the offense for which Gant was arrested might be found in his car. Id. at 1719. In its opposition, the state counters that the trial court was correct in denying defendant’s motion to suppress evidence because, the Gant court further 114concluded that “circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.” Id. at 1714. We agree.
In this case, Jefferson Parish Sheriffs officers testified at the suppression hearings that Harold Bush was shot on November 24, 2006. At the Bush murder scene, officers found seven spent cartridges consistent with “7.62 x 39 caliber” and “9 mm” rounds. Further, information from witnesses indicated that the fatal shots were fired from a vehicle as it drove by the victim. After investigation, JPSO obtained an arrest warrant in connection with Bush’s murder for Eric Massey and others. Further, JPSO obtained search warrants for several locations, including 2120 Constantine Street.
On November 29,2006, JPSO officers with other law enforcement officers were watching the house at 2120 Constantine Street. As they awaited the issuance of the arrest and search warrants, a man fitting Eric Massey’s description and two other people left 2120 Constantine, entered a red vehicle, and drove away. Once the lead officer notified the other officers that the warrants had been issued, several officers stopped the red vehicle, removed its occupants, and arrested Mr. Massey and the other occupants. One of the other occupants possessed a firearm capable of firing 9 mm rounds. Mr. Massey possessed illegal narcotics. Immediately after arresting Mr. Massey, an officer observed another weapon capable of firing 9 mm rounds in the vehicle near the spot where Mr. Massey was seated. The weapon was confiscated. As noted above, Mr. Massey seeks to have evidence of that weapon suppressed under Gant.
Here, we find that the trial court was correct in finding that the 9 mm weapon was lawfully seized. The Gant court reiterated that, “If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found.” Arizona v. Gant, 129 S.Ct. at 1714. Here, it was reasonable to conclude that
*25 this vehicle contained evidence of criminal activity connected to Harold Bush’s fatal drive-by shooting, particularly firearms. Accordingly, upon review, relator’s requested relief is denied.
State v. Massey, 09-1078 (La.App. 5 Cir. l/13/10)(unpublished opinion).
The arguments presented by defendant here are essentially the same as those made in his writ application. Thus, the threshold issue involves the applicability of the doctrine of “law of the case.”
Under the discretionary principle of “law of the case,” an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Junior, 542 So.2d 23, 27 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La.1989); State v. Burciaga, 05-357, p. 5 (La.App. 5 Cir. 2/27/06), 924 So.2d 1125, 1128. The principle is applicable to all decisions of an appellate court; not solely those arising from full appeal. State v. Johnson, 06-859, p. 12 (La.App. 5 Cir. 4/11/07), 957 So.2d 833, 840. One reason for imposition of the doctrine is the avoidance of indefinite re-litigation of the same issue; but it will not be applied in cases of palpable former error. Id. Reconsideration is warranted when, in light of subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Davis, 03-488, p. 6 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 641, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874; In re K.R.W., Jr., 03-1371, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 903, 905.
Here, defendant has failed to cite to any new facts adduced at trial or additional jurisprudence tending to indicate that this Court’s prior disposition was patently erroneous and produced an unjust result, thus, we find the law of the case doctrine applicable to this assignment and we refuse to reconsider our previous ruling finding the trial court correctly denied defendant’s motion to suppress.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the recorded telephone conversation between himself and his father was intercepted without a warrant, without consent, and in violation of Louisiana’s Electronic Surveillance Act, LSA-R.S. 15:1301, et seq., and defendant’s constitutional rights. Specifically, defendant contends that the State failed to offer any evidence to indicate that any party to the conversation was aware, or consented to the recordation.
In response, the State asserts that defendant failed to preserve this issue for appeal due to defendant’s failure to move to suppress the statements at issue on the grounds now urged. The State further argues that even if this Court were to 11ficonsider the merits of the present claim, relief would not be warranted due to the fact that evidence was adduced at trial which established that the conversation was recorded in the ordinary course of employment by an employee of the Jefferson Parish Correctional Center (“JPCC”); additionally, the recording reflects that each call was preceded by notice that the calls were subject to recording and monitoring and that the defendant evidenced his awareness of the recordings by indicating, in one of the phone calls, that he was not going to say much because “they listening.”
On August 25, 2010, the State filed a Notice of Intent to Introduce Inculpatory Statements made by the defendant during jailhouse phone calls which occurred on April 23 and 25, 2010. During the jailhouse tape recorded conversation, Brian Massey was heard telling his father to meet up with “LA” and to tell “LA” to go *26 to his lawyer and give a recorded statement saying “that it wasn’t me and Brad who did that s* * *. Because he [LA] made a statement and he made the statement saying that he ... can’t identify the people who did it. But he said that he saw who did it, but he can’t identify them. He can identify me and Brad because he know us.... So all you got to do is let me lawyer record him on a tape saying it wasn’t Brad and Brian who did that, and they going to drop the f* * * * *g charges.... Tell that n* * * *r I got $500.00 and all for him just saying that, fool.”
On August 25, 2010, the morning of trial, the trial court listened to the jailhouse tape and also heard argument from the State and defense. During oral argument, the State asserted its intent to introduce the defendant’s conversation, stating that it showed an attempt at tampering with a witness and also contradicted the statement that Ron Sherman gave to the police in which he stated that he could not identify the person who committed the crime. In response, defense counsel argued that the tape was hearsay and was being offered to establish that the |, .¡defendant was in fact at the scene of the crime and could be identified by Ron Sherman. Defense counsel further argued that since the defendant was not on trial for witness tampering, it implicated him in other crimes. The entire tape recorded conversation was played for the trial judge. The trial court disagreed with defendant’s argument regarding the hearsay nature of the conversation finding that the tape evidenced an attempt to either tamper with or manufacture a witness. Thus, the State was permitted to play the telephone conversation recorded on April 28, 2010, between the defendant and his father to the jury.
The defendant failed to object to the admission of the tape recorded telephone conversation based on his present assertion that the admission of the statement violated the Louisiana Electronic Surveillance Act. Both this Court and the Louisiana Supreme Court have held that a new basis for an objection may not be raised for the first time on appeal. State v. Cooks, 97-999, p. 11 (La.9/9/98), 720 So.2d 637, 644, cert. denied, 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); State v. Grimes, 09-2, p. 7 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 424, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023. Therefore, since defendant did not move to suppress the statement, or object to its introduction at trial based on the grounds now asserted, we find that defendant is precluded from raising this error on appeal.

ASSIGNMENT OF ERROR NUMBER THREE

In his assignment of error number three, defendant argues that the trial court erred in denying him an opportunity to cross-examine eyewitness, Courtney Washington, about an outstanding warrant against her for aggravated kidnapping. The defendant further contends that by refusing to allow him the right to question Washington concerning any bias or self-interest that may have been attached to her testimony, he was deprived of his Sixth Amendment right. Specifically, defendant | ,8asserts that the possibility that the State may have some leverage over a witness due to the witness’s pending criminal charges is recognized as a valid area of cross-examination that the trial court should have allowed the defendant to explore. Finally, defendant contends that the trial court’s error on this issue was not harmless, thus, warranting reversal and remand of this case for a new trial.
In response, the State first argues that defendant should be precluded from rais *27 ing this issue on appeal because defendant failed to contemporaneously object to the trial court’s ruling regarding the admissibility of the evidence. Secondly, the State argues that defendant cannot demonstrate that the trial court abused its discretion in ruling the material at issue inadmissible. Specifically, the State submits that the trial court was aware of facts and circumstances not fully set forth on the face of the record at trial but previously discussed between the parties. The State also contends that any deficiency in the record regarding the facts and circumstances upon which the trial court based its ruling should be attributed to the defense because defense counsel failed to make a proffer on the record regarding this issue. Finally, the State asserts that under a harmless error analysis, reversal of defendant’s conviction would not be warranted because the State presented substantial evidence of defendant’s guilt.
Prior to Washington testifying at trial, the following exchange took place between the State, defense counsel Mr. Fleming, and co-defense counsel Mr. Riehlmann, regarding Washington’s outstanding kidnapping warrant:
MR. RIEHLMANN:
What is your position on the outstanding kidnapping warrant?
MR. CLAUSS:
That is inadmissible.
MR. FLEMING:
| iflWell, I wasn’t going to go there anyway.
[[Image here]]
THE COURT:
We have argument otherwise?
MR. RIEHLMANN:
The arguments I previously submitted to the Court.
THE COURT:
Okay. I think it’s inadmissible.
MR. RIEHLMANN:
Let me just make the record clear, then. There is an outstanding warrant, I was told by Mr. Clauss some time ago for aggravated kidnapping against Courtney Washington, and I contend that it’s admissible under the Davis v. Alaska and the other cases that I submitted to the Court. And if the Court is not going to permit me to go into it, I just want to note my exception.
MR. FLEMING:
I’ll join that.
MR. CLAUSS:
And I just remind the Court that evidence of an arrest or an investigation thing is not admissible, only convictions are. So I ask that it be inadmissible, and I appreciate the Courts—
MR. HUFF:
Also the material witness warrant, I just want to make sure we are all on the same page.
[[Image here]]
THE COURT:
I am ordering that the material witness warrant, evidence of arrest, any evidence of character is not admissible.
MR. RIEHLMANN:
Judge, the aggravated kidnapping?
J^THE COURT:
Specifically that.
MR. RIEHLMANN:
Okay. Note my exception.
LSA-C.Cr.P. art. 841A provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. There is no “magic-word” formula necessary for remarks to constitute an objection. State *28 v. Shoemaker, 500 So.2d 385, 388 (La.1987). Rather, it is sufficient that a party, at the time of the ruling, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, together with the grounds therefor. LSA-C.Cr.P. art. 841; Shoemaker, supra. Where the defense counsel acquiesces when the court sustains a State’s objection to the examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741, 749 (La.1982); State v. Smith, 39,698, p. 14 (La.App. 2 Cir. 6/29/05), 907 So.2d 192, 200. Additionally, under LSA-C.Cr.P. art. 842, “[i]f an objection had been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants.”
Here, defendant properly preserved this issue for appeal when defense counsel joined in the objection of co-defense counsel after the trial court ruled that evidence regarding Washington’s outstanding kidnapping warrant was inadmissible. And although defense counsel did not object for a second time when the trial court reiterated its prior ruling, the above-referenced exchange served to make known to the court that he objected to the trial court’s limiting of cross-examination evidence. However, defense counsel did fail to proffer the testimony believed to be relevant and material to his defense.
|2i“When the trial court excludes evidence, such as witness testimony: error may not be predicated upon a ruling unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel.” LSA-C.E. Art. 103. This Court has consistently held that when a defendant does not make known the substance of the excluded evidence for the purpose of consideration by the trial and appellate court, the alleged error is not preserved for review on appeal. State v. Stevenson, 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 347; State v. Jones, 02-267 (La.App. 5 Cir. 7/30/02), 824 So.2d 514, 516, writ denied, 02-2518 (La.6/27/03), 847 So.2d 1254, (citing State v. Batiste, 96-1010, p. 8 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 769, writ denied, 98-0913 (La.9/4/98) 723 So.2d 954; and State v. Watson, 02-1154 (La.App. 5 Cir. 3/25/03) 844 So.2d 198, 211, writ denied, 03-1276 (La.5/14/04), 872 So.2d 506). Thus, a defendant has a legal right to make a proffer of the testimony. Batiste, supra. Further, rulings on admissibility of evidence are not overturned absent an abuse of discretion. Id.
In the present case, defendant has not shown that the trial judge’s exclusion has affected a substantial right because he has made no showing of how the excluded testimony was relevant and material to the defense. The record is void of any proffer made by the defense regarding the excluded testimony or the reasons for its admissibility other than to state that it is admissible under Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Thus, as a reviewing Court, we find that there is no basis to conclude that the trial judge abused his discretion.
In this present matter, the facts upon which the trial court based its ruling pertaining to the inadmissibility of the evidence regarding Washington’s warrant is not clear from the face of the record. The State notes in its brief that the record suggests that one or more discussions pertaining to Washington may have occurred | j),2off the record. Thus, in adjudicating whether the trial court abused its discretion in finding the evidence regarding Washington’s aggravated kidnapping warrant inadmissible, we note the record does not contain any reasons set forth by the trial court or pertinent, relevant facts per- *29 taming to the subject warrant, including, the circumstances surrounding the warrant, the date the warrant was issued, the date of the subject kidnapping, the present status of the warrant, or the jurisdiction that issued the warrant. Without such information, it is unclear what factors the trial court may have based the subject ruling upon.
While it is difficult to ascertain whether the trial court’s exclusion of evidence as to Washington’s alleged warrant was error without a proffer or additional facts on the record under which to analyze same, even if the trial judge erred, the denial of a defendant’s right to confrontation is subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673,106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Sherman, 630 So.2d 321, 324 (La.App. 5 Cir.1993), writ denied, 94-0258 (La.5/6/94), 637 So.2d 1086; State v. Rosales, 498 So.2d 66 (La.App. 5 Cir.1986). In determining harmless error it is “not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the trial was surely unattributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness’s testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the IgjWitness on material points, the extent of the cross-examination otherwise permitted,
and, of course, the overall strength of the prosecution’s case. Delaware v. Van Ars-dall, supra; Sherman, supra.
In State v. Schexnayder, 96-98, p. 18 (La.App. 5 Cir. 11/26/96), 685 So.2d 357, 368, writ denied, 97-2251 (La.1/16/98), 706 So.2d 973, defense counsel requested that he be able to cross-examine an eyewitness regarding outstanding attachments on him at the time of the victim’s murder. The defense counsel claimed that he wanted to show that information given to the police and testified to at trial by the eyewitness was influenced by the State’s promise of favorable treatment with respect to the open attachments. State v. Schexnayder, 96-98 at 18-19, 685 So.2d 357, 368. Additionally, the eyewitness was on probation at the time of the murder.
The eyewitness stated that he had not been promised anything in exchange for his police statements. However, one of the detectives did tell the eyewitness that he would not act on the attachments for him on that night. That detective testified that he did not promise the eyewitness anything in exchange for the identification. According to the detective, he did not discover the open attachments on the eyewitness until after the identification was made. Id.
This Court found that although the eyewitness and the detective both testified that there was no agreement made in exchange for the information, the detective’s failure to act immediately on eyewitness’s attachments might be construed as giving favorable treatment in exchange for the eyewitness’s continued cooperation. Id. This Court found that defense counsel should have been allowed to question the eyewitness about any expectations he may have had of favorable treatment, even though there was no proof of an overt agreement with the State. State v. Schexnayder, 96-98 at 20, 685 So.2d at 369.
*30 However, this Court noted l^that, even if the trial court improperly restricted defense counsel’s cross-examination of the eyewitness, the error was harmless. Id. In addition, this Court noted other evidence at trial corroborated the eyewitness’s testimony. Therefore, the guilty verdict was surely unattributable to any error that may have occurred when the trial court refused to allow the defense counsel to question the eyewitness concerning his bias. Id.
In the instant case, Washington has not been charged or convicted of a crime; however, at the time of her testimony, there was an aggravated kidnapping warrant pending. And although the State argues that Washington gave her statement to police on December 10, 2006, at a time when no warrant was pending, and thus, a time when she would have had no motivation, as in Schexnayder, the fact that the warrant was not discovered until after her testimony is negated by the lack of evidence establishing what action, if any, was taken with respect to the pending warrant.
However, even assuming that the defendant should have been permitted to cross-examine the only eyewitness to the murder about her potential bias based on the pending warrant, we determine that this potential error was harmless. At trial, the defense cross-examined Washington about a crime stoppers reward she obtained pri- or to giving her statement to police. Washington also testified regarding previous drug use which may have placed Washington’s general credibility at issue and may have aided the jury in its assessment of the truthfulness of her testimony. And while Washington may have had an interest in not being arrested or prosecuted on the outstanding kidnapping warrant, she also had an interest in having the defendants prosecuted for murdering Harold Bush, whom she considered to be “like a brother” to her. Additionally, it was Washington who agreed to speak to the police after officers noticed a t-shirt she was wearing in |2smemory of the victim. Moreover, both the State and Washington confirmed that Washington was neither threatened, coerced, nor promised anything of value in exchange for her testimony. Therefore, it appears that Washington did not have to be coerced to pursue the matter.
In addition, numerous material points of Washington’s testimony were corroborated. At trial, Washington testified that she had seen the defendant and his brother, Eric Massey, in a white truck, driving slowly through the neighborhood shortly before the shooting. Washington also testified that she was standing on the steps leading up to her trailer when she heard gunshots and turned around and again saw the white truck in the middle of the street with the defendant, and Eric Massey, standing by the victim. Additionally, Washington testified that she observed the defendant holding a weapon she described as “[a] big one, like a long one. Probably a little longer than my arm,” and Eric Massey holding “a small one.”
Corroborating this testimony, Sergeant McGuffie testified that during her surveillance of 2120 Constantine, known to be the defendant’s residence, and where both the defendant and Eric Massey were seen leaving on the day of their arrest, she took a photograph of a white SUV parked in front of the residence. The description of the white SUV appears to match the description of the vehicle provided by Washington that was driven by the defendant on the evening of the murder.
The State also presented evidence establishing that around the vicinity of the victim’s body, multiple 7.62 caliber shell casings from either an AK-47 or SKS assault rifle, and one 9 mm shell casing were *31 recovered from the scene of the murder. Subsequently, a loaded 9 mm pistol was retrieved from the vehicle defendant was driving at the time of his arrest. The 9 mm handgun found in the Reseat pouch was proven to match the 9 mm casing found at the scene of the murder and the bullet retrieved from the victim’s thigh. Finally, a DNA profile obtained from the swab of the slide of the 9 mm pistol was consistent with a mixture of DNA from at least two individuals. Specifically, the State’s DNA expert testified that the co-defendant fell within the .1 percent of the Caucasian, African-American and Hispanic population that could not be excluded as a minor contributor to the DNA mixture.
Moreover, a search warrant was executed at 2120 Constantine, known to be the defendant’s residence, where detectives recovered thirty 7.62 by 39 caliber live cartridges, 16 of which were from the same manufacturer as the cartridges recovered from the scene of the murder, and capable of being fired from a “large weapon,” such as an AK-47 or SKS assault rifle.
In addition to the physical evidence presented by the State at trial, the State also offered a theory as to the motive behind the murder. It was established that two days prior to the murder a shooting occurred in which the defendant’s cousin was shot. Additionally, prior to the murder, the defendant had been shot in the foot. The defendant informed detectives that he believed a man by the name of Johnny Bush, either a cousin or brother of victim Harold Bush, had shot him.
Accordingly, we find the guilty verdict unattributable to any error that may have occurred when the trial court refused to allow defense counsel to question Washington concerning her bias.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In his first pro se assignment of error, defendant argues that he was deprived of his Sixth and Fourteenth Amendment rights when the State withheld evidence concerning compensation that eyewitness Washington received for her cooperation in this case. Specifically, defendant contends that during the cross-examination of 127Washington, it was elicited by the defense that she had received a Crime Stoppers reward prior to testifying in this case. Thus, because the State failed to disclose such favorable information, amounting to a Brady[1] violation, defendant asserts that the trial court erred in denying his motion for mistrial. The defendant further contends that the reward money was material evidence that would have showed Washington’s motive for “coming forward” 16 days after the defendant’s arrest. At trial, during the cross-examination of eyewitness Washington, the defense questioned Washington regarding her failure to timely report the events she witnessed pertaining to the murder of Bush:
Q. ... Now, Ms. Washington, you did not speak to the police about this incident from the day Mr. Bush was killed until December 10th, right?
A. Yes.
Q. All right. Did you ever think to call Crime Stoppers and leave an anonymous call as to what you had seen? Did that ever cross your mind?
A. Yes.
Q. Okay. Did you do it?
A. Yes.
Q. Okay. When did you do it, ma’am?
A. I don’t remember exactly. But before I talked to the police, I did.
*32 Q. I’m sorry. Before you spoke to the police. But how much earlier?
A. Probably not even a week before I spoke to the police.
[[Image here]]
Q. Did you receive a reward for that? A. Yeah.
Q. And how much was that reward, ma’am?
A. I don’t remember.
|2sAfter Washington testified that she had received a reward from Crime Stoppers, a bench conference was held. The State informed the court that it had no knowledge or information concerning this matter. At the conclusion of Washington’s testimony, and out of the presence of the jury, defense counsel, at the defendant’s behest, moved for a mistrial on the grounds that “the district attorney was unable or did not provide us with information as to the reward given to Ms. Washington.” The State responded as follows:
Your Honor, I’m happy to state again that I absolutely had no knowledge whatsoever about any anonymous tip that she placed to Crime Stoppers or any other organization. I have no knowledge or any evidence in my possession that she was given a reward. No one said anything to me about that. It is not reflected in any document I’ve ever examined concerning this case. I have no knowledge whatsoever of a reward or tip of any kind or a description.
The trial court subsequently denied defendant’s motion for mistrial.
In Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97, the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant’s due process rights where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecutors. See also State v. Bright, 02-2793, pp. 5-6 (La.5/25/04), 875 So.2d 37, 41-42. The duty to disclose is applicable even where there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The State’s due process duty to disclose applies to both exculpatory and impeachment evidence. United States v. Barley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. Brady also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). See also State ex rel. Guise v. State, 00-2185, p. 2 (La.10/15/02), 828 So.2d 557, 558.
|;,flEvidence is “material” under Brady only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. A reviewing court determining materiality must ascertain “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566,131 L.Ed.2d 490 (1995).
Turning to the Crime Stopper’s reward received by Washington, at trial, it was established that Washington had received the reward prior to speaking to police about the subject murder. Thus, due to the timing of receipt of the reward, we find that Washington’s testimony at trial was not given as a result of any promises *33 or inducements by the State. Moreover, Washington testified that she did not disclose the fact that she received the award to Detective Morales or the District Attorney’s Office. Additionally, the State confirmed that it had no knowledge or evidence in its possession regarding an anonymous tip or reward received by Washington. The Crime Stopper’s reward was brought to light during cross-examination by the defense at trial. Both defense counsel for the defendant and for the co-defendant thoroughly questioned Washington about her decision to wait to report the crime to the police, and her procurement of a Crime Stopper’s reward.
First, we determine that the evidence does not support the conclusion that the State violated Brady. We find the results of the proceedings would not have been different if the information as to the Crime Stopper’s reward was disclosed pri- or to trial. Further, this evidence was not “material” evidence of the defendant’s 1 anguüt or punishment and the State had no knowledge of this information prior to trial.
We also find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial based on information learned at trial that Washington had received a Crime Stopper’s reward in this ease. Since mistrial is a drastic remedy, in instances where it is not mandatory, this relief is Warranted only when the defendant suffers substantial prejudice that deprived him of any reasonable expectation of a fair trial. State v. Lee, 09-37 (La.App. 5 Cir. 5/12/09), 15 So.3d 229 (citing State v. Harris, 00-3459, p. 9 (La.2/26/02), 812 So.2d 612, 617). The decision to grant or deny a mistrial is within the trial court’s sound discretion. The denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Lee, supra.
LSA-C.Cr.P. art. 775 provides for a mistrial under the following circumstances:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
| S1 After considering Washington’s testimony elicited on cross-examination involving her call to Crime Stopper’s and receipt of an award, we do not find that any of the mandatory or permissive grounds for the granting of a mistrial exist. The defense was given the opportunity to cross-examine Washington regarding this newly discovered evidence, and to thoroughly question her credibility. Therefore, we find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In his second pro se assignment of error, defendant argues that the trial court erred in failing to declare a mistrial when *34 a Crawford[2] violation occurred by the State’s use of Detective Morales to testify on behalf of Gerald Barker, a witness who was never called to testify at trial. Thus, defendant contends that he was deprived of his Sixth Amendment[3] right to confront his accuser and his Fourteenth Amendment Due Process right. Specifically, defendant contends that Detective Morales testified at trial regarding his interview with Barker in which he learned that both defendants were seen with a black AK-47 and driving a white SUV on the night of Bush’s murder. Defendant also asserts that Detective Morales testified that Barker positively identified both defendants from a photographic line-up and that Barker’s statement was used in preparing the arrest and search warrants in this case. Defendant further contends that the testimony provided by Detective Morales regarding Barker was hearsay testimony that prejudiced his defense. Additionally, since defendant was denied the opportunity to cross-examine Barker |S2regarding this information, defendant contends his constitutional rights have been violated and that the trial court should have granted his motion for mistrial.
At trial, Detective Morales testified as follows:
Q. Did you have occasion to take a statement and speak to Mr. Gerald Barker concerning the homicide which you were investigating?
A. Yes. I interviewed and took a recorded statement from Mr. Barker at the criminal investigation bureau.
... And during the course of that interview with Mr. Barker, did you ask him questions about the homicide you were investigating? <y
Yes, I did. <j
Okay. And did he provide you answers to you questions about that homicide investigation? cy
Yes, he did. <3
And I think you indicated that was recorded on a microcassette; is that correct? &
[[Image here]]
[[Image here]]
... did you also have the occasion to present any photographic lineups to Mr. Baker? <©
Yes. I should him two photographic lineups I prepared earlier of Brian and Eric Massey.
[[Image here]]
... as a result of the interview with Gerald Barker and the statements that he made to you and the photographic lineup procedure that you conducted with him, what, if anything, did you do next with that investigation to further your investigation? <©
... I began preparing arrest warrants for first-degree murder for Brian and Eric Massey relative to the murder of Harold Bush at Emile and Dolly on November 24th, and I also prepared three search warrants.
*35 Defendant contends that based on Detective Morales testimony regarding Barker, a witness who did not testify at trial, a mistrial should have been granted.
In State v. Styles, 96-897, p. 6 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609, this Court held | Mthat when a defendant fails to lodge a contemporaneous objection to a witness’s testimony or request an admonition or a mistrial, the defendant waives his right to assert this error on appeal. In Styles, this Court found:
LSA-C.Cr.P. art. 841(A) provides, in part, that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” The purpose behind the contemporaneous objection rule under LSA-C.Cr.P. art. 841(A) is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection.
In the instant case, as in Styles, since the defendant failed to object to the alleged testimony as hearsay, or on any other grounds, we find that he has waived his right to assert this error on appeal.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

In his third pro se assignment of error, defendant argues that his Fourth and Fourteenth Amendment rights were violated when the trial judge allowed the State to introduce into evidence the thirty 7.62 by 39 mm unfired shells and projectiles that were recovered from his bedroom pursuant to a search warrant. Specifically, defendant contends that because the trial court properly excluded the SKS rifle found in defendant’s bedroom, which was determined to be unrelated to the subject murder, the trial court should have also excluded the ammunition from the SKS rifle. By failing to do so, defendant asserts that this prejudicial evidence allowed the jurors to speculate that defendant possessed the murder weapon and discarded it prior to the search of defendant’s home.
First, we find defendant’s contention that his Fourth Amendment right was violated lacks merit. Here, the evidence recovered from defendant’s home was seized pursuant to a search warrant whose validity has not been contested. The [^Fourth Amendment protects against unreasonable searches and seizures and requires that warrants be issued only on probable cause.[4]
In this case, a valid search warrant was obtained and executed at 2120 Constantine Street, known to be defendant’s residence. In pertinent part, the following items were contained within the search warrant: any and all firearms that fire 7.62 by 39 caliber cartridge or parts or components of a firearm; and any and all 7.62 by 39 caliber ammunition. Pursuant to the execution of the search warrant, Detective Morales seized thirty 7.62 by 39 live cartridges concealed behind a headboard in the master bedroom linked to the defendant, and a Roman 7.62 by 39 mm rifle (“SKS rifle”).
Prior to trial, defendant moved to exclude the SKS rifle and ammunition seized from defendant’s bedroom. During the hearing, defense counsel argued that the SKS rifle and ammunition were unrelated to the crime charged and thus, should be excluded as prejudicial. Specifically, it was argued that ballistics testing confirmed that the SKS rifle found in defendant’s bedroom did not fire the car *36 tridges recovered from the scene of the murder. In response, with respect to the ammunition recovered, the State argued that the unusual type and brand of ammunition found in defendant’s home was the same type and brand as the casings which were recovered at the scene of the murder and therefore relevant and admissible. The State further argued that possession of the ammunition was relevant to establish that the defendant had access to the type of firearm which was used in the commission of the crime. With respect to the SKS rifle, the State argued that it was relevant to defendant’s LSA-R.S. 14:95.1 charge and would be used to establish that defendant had constructive possession of the firearm. After |ssoral argument the trial court ruled that the SKS rifle was inadmissible and that the ammunition was admissible at trial.
Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. art. 401. A trial judge, in deciding the issue of relevancy, must determine whether the evidence bears a rational connection to the facts at issue in the case. State v. Chester, 97-2790, p. 17 (La.12/1/98), 724 So.2d 1276, 1287, cert. denied, 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999). All relevant evidence is admissible, except as limited by the Code of Evidence and other laws, and all irrelevant evidence is inadmissible. LSA-C.E. art. 402. “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” LSA-C.E. art. 408. A trial court’s determination regarding the relevancy and admissibility of evidence should not be overturned on appeal absent a clear abuse of discretion. State v. Francis, 98-811, p. 3 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1237, writ denied, 99-671 (La.6/25/99), 746 So.2d 597; State v. Lyles, 03-141, p. 13 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 47. A verdict will not be reversed because of the erroneous admission of irrelevant evidence if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, finds that the error was harmless beyond a reasonable doubt. State v. Wright, 04-1038, p. 6 (La.App. 5 Cir. 2/15/05), 896 So.2d 1172, 1179. A reversal is mandated only when there is a reasonable possibility that the irrelevant evidence might have contributed to the verdict. Id. A reviewing court should consider the importance |3(iof the evidence to the State’s case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State’s case. Id.
In the present case, police recovered six spent 7.62 by 39 casings from either an AK-47 or SKS assault rifle, determined to be a Russian brand manufactured by the Ulyanovsk Machinery Plant (“UMP”), from the scene of the murder. Based upon this evidence recovered from the crime scene, a search warrant was obtained for defendant’s residence located at 2120 Constantine Street. Upon executing the search warrant, thirty 7.62 by 39 live cartridges were recovered. Of the thirty 7.62 by 39 live cartridges of ammunition recovered, 16 were UMP brand. It was further concluded that the type of ammunition seized from defendant’s home could be fired from either an AK-47 or SKS assault rifle, the weapon determined to be used in the murder of Harold Bush.
Given that the type and brand of ammunition recovered in defendant’s bedroom matched the casings obtained at the scene of the murder, we find that the thirty 7.62 *37 by 39 live cartridges of ammunition were relevant and properly admitted. Specifically, we find that the probative value of the ammunition outweighed any prejudicial effect against defendant and, therefore, the trial court did not abuse its discretion in admitting the ammunition into evidence.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth and final pro se assignment of error, defendant contends that his Due Process rights were violated when the trial court permitted the State to introduce a 9 mm handgun, found on his person at the time of his arrest, into evidence despite the fact that the subject weapon was unrelated to the murder for which he was charged. Specifically, defendant asserts that the two charges against him, second degree murder (count one) and felon in possession of a firearm (count two), were severed, with the latter being tried by the judge. Thus, defendant [ o7argues that since the 9 mm handgun was only introduced by the State to convict defendant on count two, the 9 mm handgun found in defendant’s possession at the time of his arrest should not have been introduced during his jury trial for second degree murder but rather, should have been viewed outside of the presence of the jury. Defendant contends the introduction of the 9 mm handgun into evidence in the presence of the jury prejudiced his defense.
Prior to trial, defendant requested a trial by judge on his felon in possession of a firearm charge, a violation of LSA-R.S. 14:95.1 (count two). Defendant asserted that a judge trial on count two was imperative to avoid the prejudice that would result if the State were permitted to bring out evidence of defendant’s prior conviction and evidence of a handgun which would ordinarily not be allowed into evidence at his trial as to count one, second degree murder. The trial judge granted defendant’s request for a judge trial on count two. The trial court further elected to proceed with the judge and jury trials simultaneously.
Because the judge and jury trials were to be tried simultaneously, defendant moved to exclude the evidence of defendant’s prior conviction, and the 9 mm handgun found on defendant’s person at the time of his arrest from the presence of the jury. Defendant argued that the 9 mm handgun retrieved from his waistband at the time of his arrest should not be permitted to be brought before the jury because it was excluded by ballistics as the murder weapon, and was thus, irrelevant to the crime charged. Additionally, defendant argued that the probative value of the 9 mm handgun was outweighed by the potential prejudice to defendant’s jury trial.
In response, the State argued that the 9 mm handgun found on defendant at the time of his arrest was relevant to the felon in possession of a firearm charge. Moreover, the State asserted that despite the ballistics testing which excluded the 9 mm handgun as the murder weapon, it contained the same type of ammunition | ^recovered from the scene of the murder and showed access to the variety of firearm and ammunition used to commit the murder and therefore was relevant. The State also argued that the recovery of the 9 mm handgun from defendant’s person at the time of his arrest was admissible as res gestae, as it was retrieved pursuant to defendant’s arrest for the murder of Bush and further formed the basis for the detectives’ decision to search the vehicle which led to the recovery of one of the murder weapons. Finally, the State asserted that since the indictment, which charged defendant with second degree murder and felon in possession of a firearm, had not been *38 severed, the State would be required to move forward with all of its evidence as to both counts at the same time, which would not prejudice the defendant.
The trial court found the State’s res gestae argument persuasive and denied defendant’s request to exclude the 9 mm handgun found on defendant at the time of his arrest from the jury. The trial court further ruled that defendant’s predicate conviction used to charge defendant with regard to count two would be admitted to the trial judge alone and would not be disclosed to the jury.
Although courts have upheld the practice of holding simultaneous bench and jury trials in similar matters, and it may be more expeditious and cost-effective in the administration of justice to do so, the law does not require such. See LSA-C.Cr.P. art. 490-495.1, 704-706; State v. Johnson, 98-604 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, writ denied, 99-624 (La.6/25/99), 745 So.2d 1187; and State v. Simmons, 01-293 (La.5/14/02), 817 So.2d 16. Here, the trial court simultaneously held defendant’s judge and jury trial. Because they were tried together, evidence of the 9 mm handgun seized from defendant’s person at the time of his arrest was brought before the jury. Defendant argues that by permitting the |Sfljury to hear evidence regarding a gun that was not the murder weapon, defendant was unduly prejudiced.
As a general rule, evidence of criminal conduct that takes place in a series of events is admissible at the trial of one of the offenses. See, LSA-C.E. art. 404(B). See also, State v. Morris, 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 914, writ denied, 00-3293 (La.10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002). Any time the State introduces evidence of other criminal activity by the accused, the possibility exists that the trier of fact will be affected to some degree by the evidence; for that reason, the State must be mindful of the circumstances in which it elects to try a charge of felon in possession of a firearm with other substantive offenses to insure that justice is served. State v. Butler, 08-662 (La.App. 5 Cir. 5/26/09), 15 So.3d 1091, 1103, writ denied, 09-1513 (La.3/5/10), 28 So.3d 1004.
In the present matter, the trial court excluded evidence of defendant’s prior conviction finding it relevant only as to defendant’s felon in possession of a firearm charge which would be decided by the judge. However, the trial court permitted evidence of defendant’s possession of a 9 mm handgun, which was not the murder weapon, to be introduced into evidence. We find that the introduction of this evidence did not prejudice the defendant because the evidence regarding the 9 mm handgun was admissible as “res gestae” at the murder trial.
While the Louisiana Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible “when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” LSA-C.E. art. 404 B(l); State v. Brown, 95-124, p. 5 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1074-1075. Res gestae events | ^constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that ‘the purpose served by admission of other crimes evidence is not to depict defendant as a *39 bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.”’ State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting State v. Haarala, 398 So.2d 1093, 1098 (La.1981)). The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Huizar, 414 So.2d 741, 748 (La.1982); State v. Kimble, 407 So.2d 693, 698 (La.1981). In addition, as this Court recently observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the State’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ” Colomb, 98-2813, 747 So.2d at 1076 (quoting Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).
In this case, during direct examination, Detective Morales testified that he secured arrest warrants for the defendant and co-defendant, Eric Massey, for the murder of Bush. It was known to officers that an SKS or AK47 assault rifle, and a 9 mm semiautomatic handgun were used in the commission of the murder based on the bullet casings recovered at the scene. Thus, when the vehicle defendant and 141 Eric Massey were driving in was stopped, a search of defendant was performed at which time a 9 mm handgun was recovered. Specifically, Detective Ro-drigue testified that while he was in the process of handcuffing defendant, he saw the handle of a pistol in his front right pants pocket, and alerted the other officers to the presence of the gun. Based on this information, a cursory search of the vehicle was performed and a second 9 mm handgun linked to the murder of Bush was recovered from where co-defendant, Eric Massey, had been seated.
Additionally, at trial it was established through ballistics evidence and the testimony of Detective Rodrigue, that the 9 mm handgun found on defendant’s person at the time of his arrest was not the murder weapon. The evidence presented at trial made it clear that the 9 mm handgun found in the seat pouch where co-defendant, Eric Massey, had been seated matched the one 9 mm casing found at the scene of the murder which had fired the bullet recovered from the victim’s leg and that the other 9 mm had no connection to the murder.
Based on the testimony elicited at trial, the story of how defendant and Eric Massey were arrested for the murder of Bush necessarily includes the recovery of the handgun from his person which led to the search of the vehicle and recovery of one of the murder weapons. The officers’ testimony was used to establish the facts leading up to, and including, the defendant’s arrest. The evidence regarding defendant’s 9 mm handgun was not offered for the purpose of depicting defendant as a bad person but merely as res gestae, to “complete the story of the crime on trial by proving its immediate context of happenings near in time and place.” State v. Brewington, 601 So.2d 656, 656-57 (La.1992). See, State v. Johnson, 98-604 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, writ denied, 99-0624 (La.6/25/99), 745 So.2d 1187. In Johnson, defendant was -charged with one count of being a felon in possession of a firearm, a felony, and one count of possession of marijuana, a 142misdemeanor. Prior to trial, the parties
*40 agreed that trial on the two matters would occur simultaneously and that a jury would hear the evidence on the felony charge while the trial judge would rule on the misdemeanor charge. On appeal, the defendant contended that he was prejudiced because the jury heard evidence that defendant possessed marijuana, which was otherwise inadmissible in the felony case. This Court noted that the officers testified that the marijuana was recovered simultaneously with the firearm. The evidence about marijuana was not offered for the purpose of depicting defendant as a bad person but merely as res gestae, to “complete the story of the crime on trial by proving its immediate context of happenings near in time and place.” Moreover, this Court found that any error committed in the admission of the prior bad acts was harmless error.
In State v. Butler, supra, the defendant was charged with two counts of armed robbery and one count of being a felon in possession of a firearm. The defendant moved to sever the felon in possession of a firearm charge from the robbery charges because the firearm used to support the felon in possession charge was not the same firearm that was used in the robbery. The trial court denied defendant’s motion. This Court noted that the evidence presented at trial made it clear that the gun the defendant was found in possession of was different than the gun that was used in the armed robberies. Id., OS-662, 15 So.3d at 1104. Moreover, this Court reasoned that the story of how the defendant was arrested for the armed robberies necessarily included that he was attempting to leave the house while in possession of a gun when the officers went to his address to arrest him. Thus, this Court found that the trial court did not err in denying defendant’s motion to sever.
Based on the foregoing, we find that the evidence at issue was admissible as res gestae. We further find any error by the trial court in permitting the admission |4Sof the 9 mm handgun taken from defendant’s waistband at the time of his arrest to be harmless error. The erroneous admission of other crimes evidence is subject to harmless error analysis. State v. Williams, 05-318, p. 4 (La.1/17/06), 921 So.2d 1033, 1036, unit denied, 06-0973 (La.11/3/06), 940 So.2d 654. An error is harmless when the verdict is “surely unattributable to the error.” Id. Here, there was sufficient evidence to prove defendant’s guilt as to the second degree murder of Bush without its admission. In light of the evidence presented at trial of defendant’s guilt, including eyewitness testimony, possession of 7.62 by 39 ammunition similar to the bullets used in the shooting, recovery of one of the murder weapons in the vehicle defendant was driving, photographs of a white SUV parked in front of defendant’s house which was similar to the vehicle seen by Courtney Washington at the time of the murder, and the State’s theory regarding the motive behind the murder, we find that the guilty verdict was surely unattributable to any possible error in admitting the 9 mm handgun found on defendant’s person at the time of his arrest.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
First, the trial court sentenced defendant without waiting at least 24 hours after denying his motion for new trial, as required by LSA-C.Cr.P. art. 873. In cases where the defendant either contests *41 his sentence or complains of the absence of a 24-hour delay, the failure of the trial court to observe the statutory delay or to obtain a waiver thereof normally would require the sentence to be vacated and the case remanded for resentencing. See State v. Augustine, 555 So.2d 1331, 1333-35 (La.1990). However, in the instant case, defendant neither contests his sentences |44nor complains about the absence of the 24-hour delay. Moreover, Louisiana jurisprudence has recognized exceptions to the requirement that a sentence be vacated in cases where the failure to observe the statutory delay is harmless. See State v. Seals, 95-0305, p. 17 (La.11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); and State v. Williams, 09-48, p. 19 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 369, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860. One instance in which the trial court’s failure to observe the 24-hour delay has been found to be harmless is where the sentence imposed is mandatory in nature. See Seals, supra; and State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, writ denied, 11-0338 (La.6/17/11), 63 So.3d 1037. Since the life sentence imposed in the instant case for second degree murder was mandatory under LSA-R.S. 14:30.1, we find the trial court’s failure to observe the statutory 24-hour delay was harmless error. The defendant has not suffered prejudice from the trial court’s failure to observe the statutory delay and, thus, we find that no remedial action is warranted.
Second, there is a discrepancy between the sentencing transcript and the commitment entry. The transcript reflects that the trial judge sentenced the defendant as to count two, felon in possession of a firearm (LSA-R.S. 14:95.1), to 15 years without the benefit of probation or suspension of sentence. However, the commitment entry reflects that defendant’s sentences are to be served without the benefits of parole, probation or suspension of sentence.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Further, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, the Louisiana Supreme Court found:
In instances where these restrictions are not recited at sentencing, La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this .paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.
Since the benefits provision of LSA-R.S. 14:95.1 is self-operating under La. R.S. 15:301.1, we find that corrective action is not necessary.
Third, neither the commitment nor the transcript reflects the imposition of the mandatory fine required for the guilty verdict as to count two. Defendant was found guilty by the trial judge of possession of a firearm by a convicted felon (count two). At the time of defendant’s offense, November 24-29, 2006, LSA-R.S. 14:95.1(B) provided for a sentence of imprisonment at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and a mandatory fine of not less than one thousand dollars nor more than five thousand dollars. Neither the commitment nor the transcript reflects the imposition of the mandatory fíne. Neither party has raised this issue on appeal.
*42 The Louisiana Supreme Court has held that an appellate court has the authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, even if the issue of an illegal sentence was not raised by the defendant or the State. State v. Campbell, 08-1226 at 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076 at 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. This Court has used that authority to notice the failure of the trial court to impose a mandatory fíne and the authority to remand the matter to the trial court for imposition of a mandatory fine. However, this authority is permissive rather than mandatory. In Campbell, supra, this Court noted defendant’s indigent status and declined to correct an illegally lenient sentence where the district court failed to impose a mandatory fine. In the |4fipresent case, it is noted that defendant is indigent, since he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to correct the illegally lenient sentence or to remand this matter for imposition of the mandatory fíne.
Accordingly, we affirm defendant’s conviction of second degree murder and convicted felon in possession of a firearm and affirm the sentences imposed by the trial court.
[[Image here]]

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

. The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Jones, 02-267, p. 4 (La.App. 5 Cir. 7/30/02), 824 So.2d 514, 516, writ denied, 02-2518 (La. 6/27/03), 847 So.2d 1254.

. U.S. Const, amend. IV.